CHARLES RIGGINS, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**TRIAL:** Argument—Unjustifiable Imputation of Wrongdoing. The covert assertion and reassertion, without justification, that the non-prevailing party has bribed a witness, constitute reversible error.

*Appeal from Dallas District Court.*—LORIN N. HAYS, Judge.

MARCH 7, 1922.

ACTION at law, to recover damages sustained in a collision between plaintiff's auto car and defendant's train. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Hughes, Sutherland & O'Brien,* for appellant.

*Stanley Trevarthen,* for appellee.

WEAVER, J.—The plaintiff owned an automobile which he operated as a taxicab in the city of Perry. Sixth Street in said city is crossed by the defendant's line of railway. At about 9:30 P. M. of March 20, 1920, plaintiff, with two passengers in his car, was driving south on Sixth Street, and as he was crossing the railway track, a collision occurred between his vehicle and a train of six loaded freight cars, which was being pushed ahead of an engine moving to the west. Witnesses estimated the speed of the automobile at from 10 to 15 miles per hour, and of the train at from 6 to 20 miles. The automobile was badly wrecked. Plaintiff alleges that defendant was negligent in operating its train over the crossing at an unreasonably high rate of speed, and in operating the train over the crossing without having a warning light at its front, and without proper signals. The evidence was such that the jury could properly find that the night was quite dark, and that the freight cars were being pushed ahead of the engine. There was a conflict in the evidence as to the maintenance of lantern lights on what we may call the dark end of the moving train, as well as to the giving of signals in approaching the crossing. Plaintiff testified that, in coming to the crossing, he looked both east and west, but discovered no indications of danger, and, with his car in intermediate gear, drove ahead. The effect of the collision was to practically ruin the auto, and to carry the wreck a distance of 117 feet, before the train was stopped.

Without attempting any review of the testimony, it is sufficient, for the purposes of this appeal, to say that the conflict of evidence, both as to the alleged negligence of the defendant and contributory negligence of plaintiff, was such as to take both issues to the jury. The only exceptions to the court's charge to the jury are those embodied in the motion for new trial. The net effect of the appellant's criticisms upon the

charge to the jury is not so much a denial of the soundness of the law stated therein, as it is that the court failed to go far enough in defining the terms employed, and in limiting their application to the facts disclosed by the testimony. We discover nothing prejudicial to the defense in the matters complained of. Moreover, defendant preferred no request for more particular instructions along these lines, and the assignments of error based thereon cannot be sustained.

The most serious question raised is upon appellant's exceptions taken to the argument addressed to the jury by appellee's counsel. To understand the point and force of this objection, it should be said that the two passengers in plaintiff's auto at the time of the collision were witnesses on the trial, and in the course of their examination, it was brought out that both of them had settled with the railway company, one of them, Miss Havill, receiving $20, and the other, Don Maroney, receiving $5.00, in satisfaction of any claim they might have had against the appellant on account of the accident. In making his argument to the jury, counsel for plaintiff adverted to the payments made to these witnesses, and, when objection was made to that line of argument, and counsel was advised by the court to "stick pretty close to the record," the reporter was called to take down the language used. Counsel then proceeded to say:

"Let's see, the reporter was called in, and he was called for the purpose of putting into the record that the witness, Miss Havill, was paid $20 for signing a release for any claim on account of negligence on the part of the company in this controversy; and in a statement thereafter, the company admits that they paid Miss Havill $20, and got a release from her for any personal injury she might have received, as against the company; and they also admit that they paid Donald Maroney $5.00 for the same kind of a document. There is no question but what the Chicago, Milwaukee & St. Paul Railway Company paid Miss Havill $20 and Mr. Maroney $5.00, and they refuse to pay Mr. Riggins in the same transaction, or settle with him. I suppose they just gave those people that money. They don't give Miss Havill and Mr. Maroney the same kind of care and protection that they do Mr. Riggins, because the law is that Mr. Riggins is a common carrier. When you step into a taxicab,

you are entitled to the same protection as you would be if you bought a ticket on the passenger train. The taxicab driver has no more defense against you than has a railroad, if an accident occurs. Gentlemen, to my mind, that is one of the reasons why the company has settled with them; the personal injury side of it is pure bunk. Do you suppose they expected Donald Maroney to institute a lawsuit against the Milwaukee? What is the fact? Why, they just pat him on the back, make him think he is a good fellow, and get that statement out of him, so that, if he did come in and testify in this case, and he didn't come across, they would hold this statement over him as a club. They think they can intimidate witnesses in that way. That is all there is to it. That is the reason it is disgusting to try lawsuits against a railroad company, with their hirelings going out all over the country. That is like one of the jurors who was challenged here. When I asked him if he had ever had any trouble with a railroad company, and he said that he had, but that it was settled out of court, and I asked him, 'Were you perfectly satisfied?' and he replied, 'Well, we settled.' Why, there is no satisfaction expressed in that answer. I guarantee you, if that young man could have got them to come within $200 or $300 or $500 of his damage, you never would have gotten a chance to settle this lawsuit.

"The defendant now objects to all of the statements made by the counsel since the interposition of the last objection, on the grounds that they are all highly prejudicial.

"The Court: The court thinks it would be much better for you to keep pretty close to the record, Mr. Trevarthen. (Exceptions saved.)"

Continuing his argument, counsel, referring to the testimony relating to the matter of signals alleged to have been given, and speaking with special reference to a girl who said she heard the bell, made use of this language:

"Every one of the train crew knew they had heard it, and the little girl also heard the bell. I wonder how much that testimony cost them. I couldn't find out that she was in the car; she may have been,—I don't know. She was within a block and a half. She might have had a claim against the Mil-

waukee also, but the records don't show it. I hope she was satisfactorily settled with.

"The defendant objects to the statement of counsel concerning the payment to witnesses as highly prejudicial.

"The Court: Yes, I think so; I think you ought to keep pretty close to the testimony. (Exception saved.)"

Again recurring to the witnesses Miss Havill and Don Maroney, counsel said:

"I want you to follow the instructions of the court on those three points. Then, gentlemen, when you go to your jury room, you keep this in mind, that, if they were not liable to Riggins, then they were not liable to Miss Havill. If they satisfied Don Maroney and Miss Havill, they must satisfy and settle with Riggins. If they thought they should satisfy them, why, it is now only a question of what we should get; because this company never paid anyone a dollar unless they thought they were negligent. I don't doubt but they realized and were afraid that they were going to be sued some time, and so they paid them. The law as practiced in our courts does not permit us to prove many things that we would like to prove. But in my opinion, they recognized their own liability and their own negligence in this case by making that payment. And bear in mind, gentlemen, that they broke the law in this case. I know I did not ask Miss Havill that; she was lady enough and kind enough to want to tell the truth and nothing but the truth, as a witness for my client; and she had the other people's money in her pocketbook at the time. The Milwaukee is rich and my client is poor; but this witness was willing to take the stand for us. I didn't dare ask her that question; but Mr. White elicited that bit of information, on cross-examination. I didn't do that at all. I couldn't. That is there admitted, and admitted right in this case, that it was done. I can't conclude any other way than by asking you that, if Miss Havill and Mr. Maroney was fully satisfied and settled with, that we are asking the same from you: that is, to put this man in possession of his rights; because they were negligent, and they are liable. If they were liable to one, they are to the other; and we ask that you try this case just the same, and give us the same fair and impartial consideration that I asked you gentlemen for

in the opening statements; and we will feel satisfied. I know Charles Riggins well enough to know that is so, and we think and expect that you will do it.

"The defendant now objects to the remarks of the counsel for the plaintiff made above, with reference to any settlement with Mr. Maroney or Miss Havill, for the reason that the same are immaterial and prejudicial. (No ruling. Exceptions saved.)"

This court is not inclined to circumscribe a lawyer's liberty of argument to a jury within unreasonably narrow limits; but such liberty should not degenerate into license, permitting either express or clearly implied imputations of wrong upon parties or witnesses, in the absence of something in the record offering a fair excuse for such verbal assaults. The argument indulged in by counsel for appellee was calculated, and we think it must be said was intended, to impress upon the jury the thought that the money paid to Miss Havill and Don Maroney was in the nature of a bribe—a suggestion for which there appears not the slightest foundation in the record. Had this insinuation appeared but once, and counsel, on being warned by the court, had avoided its repetition, the "break" might well be overlooked and excused as a slip of the tongue, due to the heat of discussion; but the court's admonition was wholly disregarded, and counsel returned to the attack again and again. That such manner of argument cannot be approved has too often been decided to call for citation of authorities. The assignment of error thereon must be sustained, and a new trial ordered.

The judgment below is, therefore, reversed, and cause remanded for further proceedings in harmony with this opinion. —*Reversed and remanded.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.